# Supreme Court of Florida

_____

No. SC2025-1808
_____

**IN RE: CERTIFICATION OF NEED
FOR ADDITIONAL JUDGES.**

November 26, 2025

PER CURIAM.

Consistent with the process set out in article V, section 9 of the Florida Constitution, this opinion addresses the need to increase or decrease the number of judges in fiscal year 2026-27 and certifies our "findings and recommendations concerning such need" to the Florida Legislature.[1]  We certify the need for 13

---

1.  Article V, section 9 of the Florida Constitution provides in pertinent part:

> **Determination of number of judges.**—The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits.  If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing,

additional circuit court judgeships and 12 additional county court judgeships, as identified in the appendix.  We certify there is no additional district court judgeship need.  Further, we certify there is no need to decrease the number of circuit court or county court judgeships.  We acknowledge excess judicial capacity in the Second District Court of Appeal, an issue which the Legislature has addressed by enacting legislation in the 2025 legislative session to reduce the number of statutorily authorized district court judgeships in that court through attrition.[2]

## I.  TRIAL COURTS

The Court continues to use a verified, objective weighted caseload methodology as a primary basis for assessing judicial need in the trial courts.[3]  In broad terms, this methodology assigns a case weight to each case type to represent the average judicial time

decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

2.  *See* ch. 2025-202, §§ 3, 5, Laws of Fla. (amending § 35.06(2), Fla. Stat. (2024), and creating § 35.06(7), Fla. Stat. (2025); effective July 1, 2025).

3.  *See* Fla. R. Gen. Prac. & Jud. Admin. 2.240(b)(1)(A).

required for its resolution, applies those weights to forecasted filings, and incorporates additional adjustments to project the number of full-time-equivalent judges needed in each circuit. In June 2024, the branch completed a judicial workload assessment to reevaluate and update the case weights.[4]

In addition to the objective data, the Court considers the judgeship needs application annually submitted by the chief judge of each judicial circuit. In these applications, the chief judges explain how secondary factors affect the administration of justice in their respective circuits.[5] The secondary factors identified by each chief judge reflect local conditions and considerations that may justify the Court's decision to certify additional judgeships even though the objective weighted caseload methodology indicates sufficient judicial capacity or to decline to certify a reduction when that methodology suggests excess judicial capacity.

---

4. *See Florida Judicial Workload Assessment Final Report* (June 2024), https://www.flcourts.gov/content/download/2438568/file/Judicial_Workload_Report_Final.pdf.

5. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.240(b)(1)(B), (c) (setting forth other factors that may be used in the determination of judicial need).

Using the new case weights, along with an assessment of secondary factors, the analysis for fiscal year 2025-26 resulted in the Court certifying the need for 48 judgeships (23 circuit and 25 county) in its December 2024 certification opinion.[6] In doing so, the Court chose not to certify the full complement of judgeships projected to be needed under the objective weighted caseload methodology, opting instead for an incremental approach that balanced overall judicial need with fiscal and operational considerations, including the Legislature's responsibility to address "myriad state budget priorities with limited resources."[7] The Court expresses its appreciation to the Legislature for authorizing 37 trial court judgeships (22 circuit and 15 county) during the 2025 legislative session.[8]

Building on that foundation, this opinion represents the

---

6. *In re Certif. of Need for Add'l Judges*, 407 So. 3d 1222, 1226 (Fla. 2024).

7. *Id.*

8. *See* ch. 2025-202, §§ 1-2, 5, Laws of Fla. (amending §§ 26.031, 34.022, Fla. Stat. (2024); effective July 1, 2025); ch. 2025-198, § 7, at 489, 491, Laws of Fla. (provisos accompanying specific appropriations 2990, 2992, 3003A, 3005, 3007, and 3012A).

next incremental step in addressing trial court judicial need. The Court is mindful of the state's current fiscal climate and projected budget shortfalls in subsequent fiscal years and recognizes that establishing new judgeships results in operational and potential fiscal impacts for justice-system partners, such as the clerks of the circuit courts, state attorneys, and public defenders. Taking these factors into account, the Court certifies the need for 13 additional circuit court judgeships and 12 additional county court judgeships for fiscal year 2026-27, reflecting judicial need across six circuits and seven counties. The need is most pronounced in the Twentieth Judicial Circuit and Walton County, both of which continue to significantly exceed the methodology's judicial need threshold, as documented in the 2024 judicial workload assessment and reaffirmed in the latest assessment. Although the overall judicial need indicated by the methodology is greater, this certification reflects a deliberate, incremental approach guided by fiscal realities and a continuing commitment to fully addressing judicial need over time.

Among the secondary factors discussed in the most recent

judgeship needs applications were resource issues affecting judicial workload and efficiency.  Limitations in available court system resources can result in additional time and effort spent by judges.  Chief judges noted, for example, that case managers can assist judges with implementing differentiated case management requirements, monitoring cases, and performing other ministerial tasks, thus allowing judges to focus on substantive matters.  Chief judges report that the current complement of case managers is working at capacity and, in some instances, is limited to serving a single division, leaving other divisions without support.  The Court endeavors to balance the need for judges with the need for other court system resources.  The branch, for example, submitted a legislative budget request for fiscal year 2026-27 for case manager positions and critical case management technology, which—together with additional judicial resources—will help support effective case management.

The chief judges also identified broader secondary factors contributing to judicial need.  These factors include population growth accompanied by increased filings for certain case types; a heightened demand for court interpreters and the additional

judicial time required to accommodate interpreted proceedings; the expansion of problem-solving courts, which require additional judicial engagement with participants; and the growing complexity of filings, particularly in the civil and family divisions. The chief judges anticipate that additional judgeships will allow cases to proceed more efficiently through the system, expand the availability of hearing time, and increase judicial capacity to promptly rule on motions and other matters. These improvements are expected to shorten the time to trial, increase disposition and clearance rates, and reduce local jail populations.

The Court also examined whether to certify a need to decrease the number of trial court judgeships. The objective weighted caseload methodology indicates limited areas with potential excess judicial capacity. However, based on its review of the workload data and secondary factors, the Court concluded that a reduction in the number of judges was not warranted. Secondary factors weighing against decreasing judgeships include the growing complexity of cases, geographic considerations such as the number and locations of branch courthouses, having a sufficient number of judges to ensure

access to justice, and other local circumstances. In addition, the Court recognizes that the available workload data are insufficient to establish a consistent trend of surplus judicial capacity because the new case weights were adopted only recently. The Court therefore declines to certify a decrease in judgeships at this time.

For the reasons set forth above, the Court certifies the need for 13 additional circuit court judgeships and 12 additional county court judgeships and finds that no reduction in judgeships is warranted for fiscal year 2026-27. The specific certifications for each circuit and county are set out in the appendix accompanying this opinion. The Court will continue to monitor trial court judicial workload and recommend needed judicial resources in subsequent certification opinions under article V, section 9 of the Florida Constitution.

## II. DISTRICT COURTS OF APPEAL

In accordance with Florida Rule of General Practice and Judicial Administration 2.240(b)(2), the Court continues to rely on a verified, objective weighted caseload methodology—based primarily

on the number of cases decided—as the principal criterion for evaluating judicial need in the district courts. This methodology also considers factors related to workload, efficiency, effectiveness, and professionalism as outlined in the rule.

Because the weighted caseload methodology did not demonstrate a need for additional district court judgeships and no requests were submitted by the chief judges, the Court does not certify the need for additional judgeships in this opinion. As noted, the Court continues to recognize surplus judicial capacity in the Second District and is grateful to the Legislature for enacting legislation during the 2025 legislative session to reduce the number of statutorily authorized judgeships in that court through attrition, without requiring any sitting judge to vacate his or her position involuntarily.[9] The Court also appreciates the Legislature's funding of the two district court judgeships for the Sixth District Court of Appeal certified in last year's opinion.[10]

---

9. *See supra* note 2.

10. *See* ch. 2025-202, § 3, Laws of Fla. (amending § 35.06(6), Fla. Stat. (2024); effective July 1, 2025); ch. 2025-198, § 7, at 487, Laws of Fla. (proviso accompanying specific appropriations 2977, 2979, and 2986A).

### III. CONCLUSION

Having conducted both a quantitative and qualitative assessment of trial court judicial workload, we certify the need for 25 additional trial court judges, consisting of 13 in circuit court and 12 in county court, as set forth in the appendix to this opinion. We also recommend no decrease in circuit court or county court judgeships. Finally, we certify the need for no additional judgeships in the district courts.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

Original Proceeding – Certification of Need for Additional Judges

## APPENDIX
## Trial Court Need

| Circuit | Number of Circuit Court Judges Certified | County | Number of County Court Judges Certified |
|---|---|---|---|
| 1 | 1 | Walton | 1 |
| 2 | 0 | N/A | 0 |
| 3 | 0 | N/A | 0 |
| 4 | 0 | Duval | 3 |
| 5 | 1 | N/A | 0 |
| 6 | 0 | N/A | 0 |
| 7 | 1 | N/A | 0 |
| 8 | 0 | N/A | 0 |
| 9 | 0 | Orange | 2 |
| 10 | 0 | Highlands | 1 |
| 11 | 0 | Miami-Dade | 3 |
| 12 | 0 | N/A | 0 |
| 13 | 0 | Hillsborough | 1 |
| 14 | 0 | N/A | 0 |
| 15 | 0 | N/A | 0 |
| 16 | 0 | N/A | 0 |
| 17 | 0 | N/A | 0 |
| 18 | 1 | N/A | 0 |
| 19 | 1 | N/A | 0 |
| 20 | 8 | Lee | 1 |
| Circuit Total | 13 | County Total | 12 |